**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVIS NELSON MIGNEAULT,<br><br>Defendant. | CR 25-50-BLG-WWM<br><br>ORDER DENYING MOTIONS TO DISMISS |

Before the Court are two motions to dismiss filed by Defendant Travis Nelson Migneault ("Mr. Migneault"). (Docs. 51, 53). Mr. Migneault is charged with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 2). The charges arise from Mr. Migneault's alleged possession of a privately-made firearm that included a "plastic blank" manufactured by Polymer80 in Nevada and a slide manufactured by Patmos Arms in Pennsylvania. (Doc. 67 at 3).[1] The plastic blank and slide component of the privately-made firearm are what the government relies on to establish the jurisdictional element that the firearm affected interstate commerce.

[1] A plastic blank, as the term will be used throughout this Order, is a product, typically manufactured with a 3D printer, that is a nearly complete lower receiver to a firearm. To be converted into a fully functioning firearm, a person must file down a handful of plastic tabs so that a (typically) steel slide and barrel assembly may be fitted to the (now complete) frame and secured with the use of small pins pressed into pre-drilled holes. *See Bondi v. VanDerStok*, 604 U.S. 458, 478-79 (2025).

In his first motion to dismiss, Mr. Migneault argues that the jurisdictional requirement is not met in this case. (Doc. 52). He claims that the plastic blank and the slide were manufactured outside Montana and were too incomplete to be considered a firearm at the time the component parts traveled in interstate commerce. *Id.* at 13. The United States opposes the motion and argues that because the statutory definition of a firearm includes "the frame or receiver of any such weapon," 18 U.S.C. § 921, and because the Supreme Court affirmed the statute's constitutionality in *Bondi v. VanDerStok*, 604 U.S. 458 (2025), the frame is considered a firearm. Under this construction, the jurisdictional element would be met. (Doc. 67).

In his second motion to dismiss, Mr. Migneault argues that the Indictment should be dismissed due to its retroactive application of the definition of a firearm in 18 U.S.C. § 921. (Doc. 57). He maintains that the statute was amended in 2022 to include partially completed frames in the definition of a firearm and the government "cannot prove interstate travel after 2022." *Id.* at 2. Thus, he concludes that *Bouie v. City of Columbia*, 378 U.S. 347 (1964), prevents the Court from retroactively applying the new definition of a firearm in this case. *Id.* He additionally argues that the rule of lenity and the void-for-vagueness doctrine require dismissal of this case. *Id.* at 2-3.

The United States opposes this motion as well and argues that the Supreme Court in *VanDerStok* found that 18 U.S.C. § 921 always included incomplete frames and receivers. (Doc. 68 at 2). It argues that the rule of lenity and void-for-vagueness doctrines do not apply because they "arise from this misunderstanding" and that Mr. Migneault's "understanding of the interstate nexus element is irrelevant to the charge." *Id.*

## I. Factual Background

On December 15, 2024, Billings Police Officer Alfredo Campana ("Officer Campana") was on patrol in his car east of downtown Billings when he observed a vehicle commit multiple moving violations and confirmed that it had been stolen. (Doc. 67 at 1). After a pursuit ensued, the driver ultimately crashed, striking a light pole. *Id.* The driver, later identified as Mr. Migneault, exited the vehicle wearing a "multicam LBV (load-bearing vest)," and began running away from law enforcement. *Id.*

After Mr. Migneault was arrested and his vehicle was towed to the Billings police evidence facility, the tow truck company advised law enforcement that there was a handgun in the center console that could be seen through the windshield. *Id.* Law enforcement recovered a 9mm caliber semi-automatic pistol without a serial number. (Doc. 52-1 at 1).

On January 6, 2025, Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") Senior Special Agent Philip Swain ("Agent Swain") examined the firearm to determine whether it affected interstate or foreign commerce. *Id.* Agent Swain determined the firearm affected interstate commerce because the frame was a PF9SS, manufactured by Polymer80 Inc. in Dayton, Nevada. *Id.* On July 2, 2026, Agent Swain examined the firearm again and found that the slide was manufactured by Patmos Arms in Pennsylvania. (Doc. 52-3 at 1).

II. <u>Legal Standard</u>

Federal Rule of Criminal Procedure 12(b)(1) permits a party to raise "any defense, objection, or request that the court can determine without a trial on the merits" through a pretrial motion. A pretrial motion is appropriate when it raises a legal question rather than a factual dispute. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). When a motion "raises factual questions associated with the validity of the defense, the district court cannot make those determinations" before trial. *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010) (citing *Shortt Acct. Corp.*, 785 F.2d at 1452).

Rule 12(b)(1) allows dismissal of an indictment prior to trial when the undisputed facts demonstrate that the government cannot prove an essential element of the offense. *United States v. Phillips*, 367 F.3d 846, 855 n.25 (9th Cir. 2004) (citing *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)). In order

to prove a defendant is guilty of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), the government must establish: (1) the defendant knowingly possessed a firearm; (2) the firearm had been transported from one state to another; (3) at the time the defendant possessed the firearm, the defendant had previously been convicted of a crime punishable by greater than one year; and (4) at the time the defendant possessed the firearm, the defendant knew he had such a conviction. *See* Ninth Circuit Jury Instructions Committee, *Manual of Model Criminal Jury Instructions* 14.15 (2026).

III. Discussion

"The Second Amendment protects the right of 'all Americans' to keep and bear firearms for self-defense." *United States v. Hemani*, 146 S. Ct. 1677, 1685 (2026) (citing *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008)). However, this right has its limits and can be regulated. *Id.* (citing *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 17 (2022)). "But when the government crosses the line from permissible regulation into unconstitutional infringement, courts have a duty to say so in the cases before them." *Id.*

The federal government also has its limits, confined to its enumerated powers. *See* U.S. Const. amend. X. Those limits were "adopted by the Framers to ensure protection of our fundamental liberties." *United States v. Lopez*, 514 U.S. 549, 552 (1995) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991)). The

enumerated power at issue in this case is the power to regulate interstate commerce. U.S. Const. art. 1, § 8, cl. 3. Generally, a statute issued under the commerce power is constitutional if it (1) "regulate[s] the use of the channels of interstate commerce;" (2) "regulate[s] and protect[s] the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "regulate[s] those activities having a substantial relation to interstate commerce . . . *i.e.*, those activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558-59 (citations omitted).

a. <u>First Motion to Dismiss</u>

*i. Whether § 922(g)(1) is unconstitutional as applied to Mr. Migneault.*

Mr. Migneault contends that the weapon he possessed was not a firearm when it traveled in interstate commerce, which would mean that the government cannot prove the final element of the crime in § 922(g)(1).

The Supreme Court determined that the interstate commerce requirement in § 922(g)'s predecessor, 18 U.S.C. § 1202(a), was only intended to be a minimal commerce nexus requirement "that the firearm have been, at some time, in interstate commerce." *Scarborough v. United States*, 431 U.S. 563, 575 (1977). "Congress sought to reach possessions broadly, with little concern for when the nexus with commerce occurred." *Scarborough,* 431 U.S. at 577.

The Ninth Circuit has applied the Supreme Court's holding in *Scarborough* to § 922(g). *United States v. Hanna*, 55 F.3d 1456, 1462 (citing *United States v. Sherbondy*, 865 F.2d 996, 1000-01 (9th Cir. 1988)). "Congress gave no indication that it meant to narrow the statutory reach with respect to possession. Accordingly, we hold that the *Scarborough* minimal nexus standard applies to § 922(g) and that a past connection with commerce is enough." *Sherbondy*, 865 F.2d at 999-1000 (holding that the government does not need to show a "present connection" between the defendant's possession of a firearm and interstate commerce; rather, the government only needs to prove that the firearm "had at one time crossed state lines").

For purposes of the Gun Control Act of 1968, the frame or receiver of a firearm is itself treated as a firearm. *VanDerStok*, 604 U.S. at 465. The term "firearm" is defined in 18 U.S.C. § 921(a)(3) as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) *the frame or receiver of any such weapon*; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

(emphasis added). In 2022, ATF, in interpreting the Gun Control Act, amended its definition of a firearm to cover:

> a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive. The term shall not

> include a weapon, including a weapon parts kit, in which the frame or receiver of such weapon is destroyed as described in the definition "frame or receiver."

27 C.F.R. § 478.11 (2022). Furthermore, ATF broadened the definitions of "frame" and "receiver" to include "a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." 27 C.F.R. § 478.12(c) (2022). This does not include "a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon." *Id.*

Using the definitions above, it is clear that a plastic blank shipped from Nevada, as the government alleges (Doc. 67 at 13), is a firearm that traveled in interstate commerce. The definition of firearm includes those items that are clearly meant to be weapons that are readily convertible into functional firearms. *VanDerStok*, 604 U.S. at 470-72. ATF only clarified that this definition also included weapons parts kits that may readily be assembled, something the agency has claimed for decades. *Id.* at 480. And because a frame is a firearm and the firearm must have at least minimally affected commerce by traveling from Nevada to Montana, Mr. Migneault's as-applied challenge must fail under current precedent. *Sherbondy*, 865 F.2d at 1000-01.

*ii. Whether the item in Mr. Migneault's possession was a readily convertible frame.*

As for the balance of Mr. Migneault's contentions in his as-applied challenge to the law, they would require the Court to determine facts that are not appropriate for a ruling at this stage in the case. Mr. Migneault argues that the government cannot prove that his plastic blank from Polymer80 was part of a kit that would be readily convertible into a firearm. (Doc. 52 at 6-7). The Supreme Court did explicitly state that the ruling in *VanDerStok* did not set the minimum floor for a kit to be "readily convertible." 604 U.S. at 473, 481 ("[T]his case does not require us to untangle exactly how far [the statutory definition of firearm] reaches . . . . Some products may be so far from a finished frame or receiver that they cannot fairly be described using those terms.").

In his brief, Mr. Migneault states that it is unclear whether the object he received was a complete firearm construction kit, a nearly complete kit, or something less than that. (*See* Doc. 52 at 13). Assuming that his representations are correct, it is not a question for the Court to rule on in response to a preliminary motion to dismiss. The Court cannot answer such questions of fact at this stage. *See Shortt Acct. Corp.*, 785 F.2d at 1452.[2]

---

[2] The parties have not opined on whether a pretrial ruling on this fact question would invade the province of the jury. At this point, the Court lacks sufficient facts to make a ruling one way or the other, so the question is not material at present. Furthermore, whatever the answer to the question is, it is irrelevant to the indictment. Mr. Migneault was charged with possessing a completely operational firearm while being prohibited from doing so; knowing

*iii. Whether § 922(g)(1) is unconstitutional on its face.*

Mr. Migneault takes up the admonition from Justice Thomas in *Hemani* to ask lower courts if Congress can ban the mere possession of a firearm under its power to regulate interstate commerce. (Doc. 52 at 19-20); *Hemani*, 146 S. Ct. at 1698 (Thomas, J., concurring).

As discussed earlier, the Supreme Court in *Lopez* listed three categories of regulation that were valid using the commerce power. *Lopez*, 514 U.S. at 558-59 (citations omitted). In *Gonzales v. Raich*, however, the court added a fourth category: regulations of "purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." 545 U.S. 1, 17 (2005). The Court even approved of regulation of an individual's conduct that only had a *de minimis* effect on commerce, such as the mere possession of six marijuana plants. *Id.* at 7, 19. Following *Raich*, the Ninth Circuit has also affirmed convictions for mere possession of a firearm while being an alien unlawfully present in the United States (in violation of 18 U.S.C. § 922(g)(5)(A)) and the mere possession of a machinegun (in violation of 18 U.S.C. § 922(o)). *United States v. Latu*, 479 F.3d 1153, 1156-57 (9th Cir. 2007); *United States v. Stewart*, 451 F.3d 1071, 1078 (9th Cir. 2006).

---

whether he received a complete parts kit, merely a rough chunk of plastic, or any other type of object from Polymer80 would have no effect on the charged crime. (Doc. 2 at 2).

This Court must follow binding precedent and, therefore, Defendant's invitation to dismiss the Indictment on Commerce Clause grounds is rejected.

b. Second Motion to Dismiss

Mr. Migneault argues that this prosecution is also unconstitutional on due process grounds. His argument is two-pronged. First, Mr. Migneault lacked fair warning of the conduct the government is calling criminal. (Doc. 57 at 5). Second, the law that the government is applying to Mr. Migneault is ambiguous and should, therefore, be interpreted in favor of lenity. (Doc. 57 at 11). Those arguments, however, both rest on flawed understandings of the law.

*i. Whether Mr. Migneault had fair warning that he was prohibited from possessing the firearm in this case.*

At issue here is whether Mr. Migneault or any other person of common intelligence could have known that he was in possession of a firearm. Mr. Migneault attempts to frame the discussion around whether he could have known that the government defines an incomplete polymer handgun frame as a firearm. That framing, however, fails to recognize that the government alleges that Mr. Migneault possessed a complete and functional handgun with a polymer frame and a steel slide and does not need to prove that he knew it had traveled in interstate commerce.

The Fifth Amendment of the U.S. Constitution guarantees that no person may be "deprived of life, liberty, or property without due process of law." Within

that due process requirement is a belief that individuals must have fair warning of conduct that may result in criminal punishment. *See Bouie*, 378 U.S. at 350-51 ("The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court."). The fair warning requirement halts the enforcement of vague statutes, defined as "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). Further, a court may not apply a "novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fully disclosed to be within its scope." *Id.* That said, a statute is presumed to be constitutional and will generally be interpreted to not include unconstitutional meanings. *See United States v. Harris*, 185 F.3d 999, 1003-04 (9th Cir. 1999). Nor does the Constitution make any amount of vagueness in a criminal statute a complete bar to enforcement. *See Schwartzmiller v. Gardner*, 752 F.2d 1341, 1345-46 (9th Cir. 1984) (acknowledging that "[a] vague statute may *invite* arbitrary enforcement . . . virtually any law *allows* it.") (quoting Peter W. Low, John Calvin Jeffries & Richard J. Bonnie, *Criminal Law: Cases and Materials*, 68-69 (1982)). Instead, a criminal statute is constitutional if its language provides "sufficiently definite warning . . . when measured by common

understanding and practices." *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993) (quoting *Turf Center, Inc. v. United States*, 325 F.2d 793, 795 (9th Cir. 1963)).

Mr. Migneault relies heavily on the idea that the ATF changed the definition of "firearm" in 2022 when it promulgated what is now 27 C.F.R. § 478.12(c) (2022). That is beside the point, but for the sake of argument, the Supreme Court's holding in *VanDerStok* indicates the opposite, that the ATF did not change the definition of "firearm" within the Gun Control Act. There, the Court held that the definition of "firearm" within the Gun Control Act always contained partially complete receivers and frames like the item Mr. Migneault is alleged to have purchased from Polymer80, specifically because Congress included those items which may be "readily converted" into functional firearms in the definition all the way back in 1968. *See VanDerStok*, 604 U.S. at 472. In fact, the Court even used a kit from Polymer80 as an example to show the type of thing that was within the definition of firearm prior to ATF's 2022 rule. *Id.* at 468-73.

That said, the government does not allege that Mr. Migneault possessed merely an item that could be readily converted into a firearm; it alleges that he had already converted his partially complete frame into a fully functional firearm. (Doc. 68 at 4) (discussing both a frame and a slide that were assembled together). Mr. Migneault even concedes that he possessed a privately-made firearm that

included a plastic blank from Polymer80, not merely the blank alone. (Doc. 57 at 3). Even without the *VanDerStok* holding that a plastic blank was always within the definition of a "firearm" under the Gun Control Act, the blank and slide put together into a complete pistol was certainly a firearm when Mr. Migneault possessed it in Billings on December 15, 2024.

Accordingly, the question about fair warning is not "whether Mr. Migneault knew or should have known that it was illegal for him to possess a plastic blank that could be readily converted into a firearm," but rather, "whether Mr. Migneault knew or should have known that it was illegal for him to possess a complete and operational firearm." The answer to the latter question must be in the affirmative. *See* 18 U.S.C. § 922(g)(1). Even a privately-made firearm, which Ninth Circuit precedent would still hold as affecting interstate commerce just through its mere possession, *see supra* pp. 10-11, has been included in a prior opinion in this circuit to fall into the definition provided in § 921(a)(3). *See United States v. Munoz*, 57 F.4th 683, 686-87 (9th Cir. 2023) (holding that a firearm made from a Polymer80 kit counted as a firearm for purposes of a sentencing enhancement in U.S.S.G. § 2K2.1(b)(1), which uses the same definition as 18 U.S.C. § 921(a)(3)). Therefore, a person of reasonable intelligence, at least within the Ninth Circuit, should be able to know that mere possession of a firearm affects interstate commerce, *Latu*, 479 F.3d at 1156-57, and that a privately-made firearm is still a

firearm, *Munoz*, 57 F.4th at 686-87. That suffices for fair warning that the conduct charged by the government in this case was unlawful at the time it was committed.

*ii. Whether the law is so vague as to require lenity towards Mr. Migneault.*

Mr. Migneault argues that the definition of "firearm" in the Gun Control Act is vague. His argument stems from the phrase "may readily be converted" in the definition of a "firearm" having no statutory definition.

Vagueness in the law does tend to make a law unenforceable. *See United States v. Davis*, 588 U.S. 445, 447 (2019) ("In our constitutional order, a vague law is no law at all."). Courts, however, are reluctant to read statutes as truly vague, presuming their validity instead. *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). But, even if a law is not so vague as to be unenforceable, the rule of lenity suggests that any ambiguity should be resolved in favor of the defendant. *See United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 (1992). That said, the rule of lenity is only applicable when every traditional tool of statutory interpretation has been applied and ambiguity still remains. *See United States v. Hayes*, 555 U.S. 415, 429 (2009) (citing *United States v. Shabani*, 513 U.S. 10, 17 (1994)).

In *VanDerStok*, the Supreme Court directly confronted the issue of how to read "may readily be converted" in deciding whether the ATF had been delegated the authority to regulate incomplete frames and receivers. 604 U.S. at 468. The

Court concluded that at least some incomplete frames and receivers were readily convertible enough to be covered by the Gun Control Act's grant of authority to the ATF. *Id.* While the Court acknowledged that some kits fall outside of the category of weapons that may be readily converted into firearms, the Court gave the specific example of Polymer80's "Buy, Build, Shoot" kit as precisely the type of unfinished frame or receiver that fits the statutory language. *Id.* at 472-73. The Court reached this conclusion relying on the ordinary meaning of the statutory text and the surrounding language that Congress used in the Gun Control Act, ruling out the application of the rule of lenity. *Id.* at 484.

Finally, it must be restated that the government does not allege that Mr. Migneault merely possessed a plastic blank. (Doc. 68 at 10-11). It is ultimately irrelevant if the Polymer80 frame counts as a firearm under the definition given in the Gun Control Act because it was converted into a complete firearm when Mr. Migneault possessed it at the time alleged in the Indictment. *Id.* at 10. The government does not need to prove that Mr. Migneault knew the firearm that he possessed had traveled in interstate commerce as a firearm, only that he knew he possessed a firearm while being prohibited from doing so. *See* Ninth Circuit Jury Instructions Committee, *Manual of Model Criminal Jury Instructions* 14.15 (2026). There is no ambiguity about what conduct would meet that instruction, so the rule of lenity does not apply.

IV. Conclusion

For all of these reasons, Mr. Migneault's motions to dismiss must be denied. His case does not present facts where the rule of lenity applies, even if the statute could have been better drafted. Further, this Court is bound to apply precedent, and as it stands currently, 18 U.S.C. § 922(g)(1) is constitutional under the Commerce Clause.

Accordingly,

**IT IS HEREBY ORDERED** that Mr. Migneault's Motions to Dismiss (Docs. 51 and 53) are DENIED.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 30th day of September, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE